# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG SCOTT, | : | CIVIL NO. 1:11-CV-757 |
| | : | |
| Petitioner, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| U.S. ATTORNEY GENERAL | : | |
| ERIC HOLDER, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction

In this case the Petitioner, a federal prisoner, invites this Court to review and revise a sentence credit calculation done by the Federal Bureau of Prisons for this inmate. Having conducted this review, we find no error in that calculation, which properly allocates and aggregates time to be served by Scott on his various federal sentences. Therefore, we recommend that this petition for a writ of habeas corpus be denied.

### II.  Statement of Facts and Case

Craig Scott is a serial armed bank robber. In this case the interplay of federal sentences which forms the basis for this sentence credit calculation began fifteen years ago, on February 17, 1995, when Scott was sentenced by the United States District Court for the District of Maryland to 87 months imprisonment for bank robbery, and

five years imprisonment for the use and carrying of a firearm in the commission of a crime of violence. (Doc. 6-1, Kelly Dec. ¶ 5; Judgment Att. 1 to Kelly Decl. at 1.) As required by law, 18 U.S.C. §924(c), the Court ordered the five-year term on this firearms offense to run consecutively to the 87-month term. (Id.)

One year later, on February 23, 1996, Scott was sentenced by the United States District Court for the District of Maryland for his involvement in another armed bank robbery. On this occasion Scott was sentenced to 77 months imprisonment for conspiracy to commit bank robbery, and bank robbery. (Id., ¶ 6; Judgment, Att. 2 to Kelly Decl. at 1.) The court ordered this 77-month term to run concurrently with the unexpired 87-month term imposed one year earlier on February 17, 1995, for a separate bank robbery, but ordered that the sentence run consecutively to the mandatory 5-year term imposed on Scott on February 1, 1995, for his firearms conviction. In addition, on February 23, 1996, the Court sentenced Scott to two consecutive 20-year terms, or a total of a 40-year term of imprisonment, for using and carrying of a firearm in the commission of this additional bank robbery. (Id.) Once again, the Court ordered this 40-year sentence on these firearms charges to be served consecutively to the 77-month term for the bank robbery offenses. (Id.) This consecutive punishment aspect of these firearms sentences was mandated by statute. In particular, 18 U.S.C. §924(c) expressly provided that: "no term of imprisonment

imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii).

Four years later, on February 14, 2000, the Court issued an amended judgment which reduced the 77-month bank robbery sentence imposed on Scott on February 23, 1996, to a 9-month term of imprisonment, and directed that this jail sentence run concurrently with the separate, and unexpired, 87-month bank robbery sentence previously imposed on Scott on February 17, 1995. These bank robberies sentences were to run consecutively to the 5-year mandatory jail term imposed on Scott for using firearms in connection with the first of these bank robberies. Furthermore, the 40-year term for the use and carrying of a firearm in the commission of a crime of violence imposed upon Scott in connection with his second bank robbery conviction also remained unchanged, except that it was now to be served consecutive to the 9-month term.(Id.)

Consistent with the longstanding sentence calculation guidance set forth in BOP Program Statement 5880.28, Scott's multiple terms of imprisonment were required to be "treated for administrative purposes as a single, aggregate term of imprisonment." See 18 U.S.C. §3584(c) and BOP Program Statement 5880.28, p. 1-33.

(Id., Kelly Decl. Ex. A ¶ 8; BOP SENTRY Report, Sentence Monitoring Computation Data Att. 4 to Kelly Decl.) Therefore, the order of service of Scott's sentences was computed by the Bureau of Prisons as follows: (1) Scott was first to serve the 87-month bank robbery term; (2) this term was then followed by the mandatory, consecutive 5-year jail term imposed upon Scott for the firearms offenses associated with this bank robbery conviction; (3) these penalties were then followed by the two 20-year mandatory consecutive jail terms imposed on Scott following his second and subsequent bank-robbery related firearms convictions, for an aggregated term of confinement of 45 years and 87 months. (Id.) Scott's sentence commenced on February 17, 1995, the date of imposition of his first sentence. (Id.) Scott was awarded prior custody credit of 254 days for the period of time from June 8, 1994, through February 16, 1995. (Id.) Accordingly, Scott's current projected release date, is December 19, 2039. (Id.; Kelly Decl. pp. 3-4.)

Dissatisfied with this sentence calculation, Scott pursued, and fully exhausted, his administrative remedies within the Bureau of Prisons. Scott then filed this petition for writ of habeas corpus on April 20, 2011. (Doc. 1.) In his habeas corpus petition, Scott argued that the Bureau of Prisons incorrectly computed his federal sentence and alleged that the Bureau of Prisons Program Statement which prescribes the process for

sentencing calculation, BOP Program Statement 5880.28, is invalid as applied to his case.

This petition has been briefed by the parties (Docs. 1, 6 and 8) and is now ripe for resolution. For the reasons set forth below, it is recommended that the petition be denied, since the Bureau of Prisons has accurately calculated the sentence credit that Scott is entitled to receive on the facts of this case in accordance with the law which governs such credits.

### III. Discussion

#### A. Scott's Petition Fails on its Merits.

Scott's petition invites this court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who was serving multiple federal sentences, including multiple mandatory, and consecutive, sentences. There are several component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed: "'Computing a

federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F.Supp. 618, 621 (M.D.Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by federal prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

Chambers v. Holland, supra, 920 F.Supp. at 621.

However, as the Supreme Court has recognized, United States v. Wilson, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute. That statute, 18 U.S.C. § 3585, provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

>(b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
>(1) as a result of the offense for which the sentence was imposed; or
>
>(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
>that has not been credited against another sentence.

18 U.S.C. § 3585.

Finally, both by statute and by Bureau of Prisons' policy, prison officials are instructed that, when engaging in sentence calculations pursuant to 18 U.S.C. § 3584(c), "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." See also BOP Program Statement 5880.28 at 1-33.

These statutes, and case law construing the statutes, then guide us in addressing the questions which lie at the heart of Scott's habeas petition: First, when did Scott's sentence commence? Second, to what extent may Scott receive credit for any time already spent in custody? Third, may prison officials follow the guidance set by law that "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment," when calculating Scott's release date?

With respect to the first of these questions regarding when Scott's sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990). As a result, a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F. Appx. 591, 592-93 (3d Cir. 2009). In this case the Bureau of Prisons has correctly concluded that Scott's sentence commenced when the first sentence was imposed, February 17, 1995.

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent the Defendant may receive credit for any time already spent in custody against his federal sentence. In this case it is undisputed that Scott commenced his sentence for the first of these federal bank robbery and firearms offense on February 17, 1995. This is undeniably the correct starting point for Scott's various sentences since "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v.

Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir. 2009).

Here, the Bureau of Prisons then properly credited Scott's federal sentences for those days that he was detained pending trial on these federal charges, by awarding Scott prior custody credit of 254 days of pre-trial detention from June 8, 1994, through February 16, 1995. Thus, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of Scott's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law. Consistent with case law, it ensured that Scott received full credit against his federal sentence for jail time which he served that had not been credited against another sentence. Thus, this federal jail time credit calculation provided Scott with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time." Id.

Finally, to the extent that Scott challenges the validity of BOP Program Statement 5880.28, which governs sentence credit calculations, or 18 U.S.C. §

3584(c), statutory mandate that "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment," this petition warrants only brief consideration. As the United States Court of Appeals for the Third Circuit has aptly noted when examining a similar challenge to BOP Program Statement 5880.28:

> [W]e dispose of [this type of] challenge to the validity of BOP's Program Statement 5880.28 with little discussion. [The petitioner] simply contends that the BOP's interpretation of § 3585(b), as set forth with noted exceptions in Program Statement 5880.28, is too narrow. . . . Affording the BOP's Program Statement the deference it is due, we cannot declare it invalid on the basis of the challenge lodged against it by Shahid. See Rios v. Wiley, 201 F.3d at 275, citing Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).

Shahid v. Schultz, 272 F. App'x. 150, 154 (3d Cir. 2008).

Likewise, in another context BOP Program Statement 5880.28's sentence calculation provisions have been construed as agency policies that are entitled to deference by the courts as a "reasonable and persuasive" methodology for sentence calculation under federal laws. Tablada v. Thomas, 533 F.3d 800 (9th Cir. 2008). Such deference is particularly appropriate here, where the agency policy precisely mirrors the statutory guidance of 18 U.S.C. § 3584(c), that "multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." Furthermore, to the extent that Scott protests the duration of these aggregate sentences, it is apparent that the severity

of those aggregate sentences is not a product of an erroneous sentence calculation by the Bureau of Prisons, as Scott suggests. Rather, it is a function of the confluence of two immutable facts: First, one of the statutes under which Scott was convicted, 18 U.S.C. §924(c), specifically mandated lengthy, mandatory jail terms for use of firearms to commit crimes of violence such as bank robbery. Therefore, neither the sentencing judges, nor the Bureau of Prisons could have avoided imposition and execution of multiple, mandatory, lengthy sentences in this case once Scott was convicted of serial armed bank robberies. Given this stark legal reality, Scott's present dilemma then becomes a product, not of the Bureau of Prisons' conduct, but rather of his own ill-fated choice to indulge in serial, armed bank robberies. Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Scott all the credit he is entitled to receive, Scott's petition for writ of habeas corpus should be denied.

In the traverse which Scott filed in support of this petition, he advances two new, different and novel claims which merit brief discussion. First, in his traverse, Scott eschews relief through a writ of habeas corpus. Instead, Scott invokes the writ of mandamus, and asks the court to use its mandamus jurisdiction to order the Department of Justice to recalculate his sentence. (Doc. 8, p.2.)

This Court should decline Scott's invitation to use a writ of mandamus as a tool for recalculating sentence credit. A petition for writ of mandamus is an ancient form of common law judicial relief, a request for a court order compelling a public official to perform some legally-mandated duty. The power of federal courts to issue writs of mandamus is now defined in a federal statute, 28 U.S.C. § 1361, which provides that:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C.. § 1361.

Writs of mandamus compelling government officials to take specific actions, are extraordinary forms of relief, which must comply with demanding legal standards. Thus, it is well-settled that "The writ is a drastic remedy that 'is seldom issued and its use is discouraged.' " In re Patenaude, 210 F.3d 135, 140 (3d Cir. 2000), (quoting Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988)). Thus, as a general rule:

> There are two prerequisites to issuing a writ of mandamus. [Petitioners] must show that (1) they have no other adequate means to attain their desired relief; and (2) their right to the writ is clear and indisputable. See In re Patenaude, 210 F.3d 135, 141 (3d Cir.2000); Aerosource, Inc. v. Slater, 142 F.3d 572, 582 (3d. 1988).

Hinkel v. England, 349 F.3d 162, 164 (3d Cir. 2003).

Moreover, "[m]andamus is an extraordinary remedy that can only be granted where a legal duty 'is positively commanded and so plainly prescribed as to be free from doubt.' " Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 112 (3d Cir.1996) (quoting Harmon Cove Condominium Ass'n, Inc. v. Marsh, 815 F.2d 949, 951 (3d Cir.1987)). See Ararat v. District Director, ICE, 176 F.App'x. 343 (3d Cir. 2006). Therefore:

> Mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (discussing the common-law writ of mandamus, as codified in 28 U.S.C. § 1361). See also Stehney, 101 F.3d at 934 (mandamus relief is a drastic remedy only to be invoked in extraordinary circumstances).

Stanley v. Hogsten 277 F. App'x. 180, 181(3d Cir. 2008).

As one court has aptly observed when describing the precise and exacting standards which must be met when a petitioner invokes the writ of mandamus:

> The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34,(1980). Only "exceptional circumstances amounting to a judicial 'usurpation of power' " will justify issuance of the writ. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) (quoting Will v. United States, 389 U.S. 90, 95(1967)); see also In re Leeds, 951 F.2d 1323, 1323 (D.C.Cir.1991). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10

> (D.C.Cir.2005) (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C.Cir.2002)); see also Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of the United States Senate, 471 F.3d 1341, 1350 (D.C.Cir.2006) (concluding that the extraordinary remedy of mandamus need not issue in a case arising under the Congressional Accountability Act where the issue could be addressed by an appeal from a final judgment). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.' " Power v. Barnhart, 292 F.3d at 784 (quoting Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C.Cir.1997)). Where the action petitioner seeks to compel is discretionary, petitioner has no clear right to relief and mandamus therefore is not an appropriate remedy. See, e.g., Heckler v. Ringer, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); Weber v. United States, 209 F.3d at 760 ("[M]andamus is proper only when an agency has a clearly established duty to act.").

Carson v. U.S. Office of Special Counsel, 534 F.Supp.2d 103, 105 (D.D.C.2008).

In the past, petitioners, like Scott, have frequently turned to the writ of mandamus to try to compel components of the United States Department of Justice to take some specific action. These petitions have been many and varied in their forms, embracing wildly diverse disputes, but one consistent theme throughout these cases has been that the courts rarely such embrace mandamus requests. See e.g., Priskanin v. Doe, 349 F. App'x 689 (3d Cir. 2009)(denying mandamus request that FBI protect former alleged informant); Stanley v. Hogsten, 277 F. App'x. 180, 181(3d Cir.2008) (denying federal inmate mandamus request for law book) ; Ararat v. District Director, ICE, 176 F. App'x. 343 (3d Cir. 2006)(denying prisoner mandamus request to remove detainer); Beckley v. Miner, 125 F. App'x 385 (2d Cir. 2005)(denying mandamus

14

request for prison transfer); Leonhard v. Mitchell, 473 F.2d 709 (2d Cir. 19730(denying mandamus request for disclosure of whereabouts of witness protection program witness); Sloan v. Troung, 573 F.Supp.2d 823 (S.D.N.Y. 2008)(denying mandamus request for Department of Justice to intervene in Chess Board election); Saini v. Heinauer, 552 F.Supp.2d 974 (D.Neb. 2008)(denying mandamus request to order FBI to expedite fingerprint processing of petitioner, an applicant for naturalization); Carson v. U.S. Office of Special Counsel, 534 F.Supp.2d 103,105 (D.D.C.2008) (denying mandamus petition to compel the Office of Special Counsel to prepare and produce a report).

These principles apply here and are fatal to Scott's request for a writ of mandamus recalculating his sentence credit. Such a writ may only issue when a petitioner has "no other adequate means to attain their desired relief; and [his] right to the writ is clear and indisputable." Hinkel v. England, 349 F.3d 162, 164 (3d Cir. 2003). Moreover, "[m]andamus is an extraordinary remedy that can only be granted where a legal duty 'is positively commanded and so plainly prescribed as to be free from doubt.'" Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 112 (3d Cir.1996). Here, Scott's petition for writ of mandamus fails on both of these scores since: (1) Scott has other means to attain the relief he seeks through a writ of habeas corpus; and (2) Scott has shown no right to any relief, let

alone a right to relief so positively commanded and so plainly prescribed as to be free from doubt. Therefore, Scott's request for relief, whether cast as a petition for writ of habeas corpus or a petition for writ of mandamus, simply fails.

Finally, in his petition, Scott requests leave of court to serve discovery requests, interrogatories, upon the United States. (Doc. 8, p.4.) This request should also be denied. Habeas petitioners have no absolute right to make discovery demands upon respondents. Rather, decisions on discovery requests rest in the sound discretion of the court. As the United States Court of Appeals for the Third Circuit has noted:

> Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, see Wacht v. Cardwell, 604 F.2d 1245, 1246 n. 2 (9th Cir.1979), neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who chooses to seek such discovery. Under Rule 6(a) of the Rules Governing Habeas Corpus Cases Under § 2254 the district court has discretion to decide the extent to which discovery is appropriate. The Advisory Committee Note to Rule 6 makes clear that prior court approval is required to prevent abuse.

Mayberry v. Petsock, 821 F.2d 179, 185 (3d. Cir. 1987).

These discovery rules apply with equal force to federal habeas petitions under § 2241. See, e.g., Patton v. Fenton, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979) (explaining that habeas rules are "applicable to Section 2241 petitions through Rule 1(b)").

Here, in the exercise of this discretion, it is recommended that this request for discovery be denied. The request is inappropriate and unnecessary for at least three reasons. First, the legal issues in this case are fully developed, and the factual setting of this case is fully explained in the parties' pleadings. Therefore, this proposed discovery is unnecessary. Second, Scott's petition clearly fails on its merits as a matter of law. Accordingly, factual discovery of the type proposed by Scott cannot save this flawed petition. Finally, the discovery sought here by Scott relates more to legal conclusions regarding sentence calculations, rather than factual information. Thus, the discovery sought here by Scott is inappropriate. Since this requested discovery is both unnecessary and inappropriate, the request to indulge in this discovery should be denied.

**IV**. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition

of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of May, 2011.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge